UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 19 CR 733-3 |
| v. | ) | Honorable Magistrate Maria Valdez |
| | ) | |
| JERY BARTON, et al. | ) | |

**CLOSING BRIEF OF JERY BARTON ON MOTION TO DISMISS COMPLAINT FOR LACK OF PROBABLE CAUSE**

Defendant, Jery Barton, by and through his attorney, Susan Bogart, hereby moves this Court, pursuant to the U.S. Constitution and Rule 5.1 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 3060 (a) to dismiss this case against him for lack of probable cause and, in support, states as follows:

**I.    INTRODUCTION**

1. On September 20, 2019, the United States filed a complaint against Defendant, Jery Barton under the above captioned case. (Dkt. 1; Government Ex. 1 ("GX 1")).

2. Barton was charged with a conspiracy to commit concealment money laundering (11/7/19 Tr. 6:3-5) in one count of engaging in financial transactions designed in whole or in part to conceal and disguise proceeds of a specified unlawful activity, namely the felonious buying and selling of controlled substances in violation of 18 U. S. C. § 1956 (a) (1) (B) (i). (Dkt. 1; GX 1, p. 1).

3. On October 2, 2019, Defendant Jery Barton was arrested on the complaint in Toledo, Ohio, the U.S. district court for the Northern District of Ohio, Case No. 3:19-mj-05355-JRK which was returned on October 24, 2019. (Dkt. 47).

1

4. On October 24, 2019, Defendant Jery Barton appeared for his initial appearance on the complaint before the Duty Magistrate Judge, the Honorable Maria G. Valdez, U.S. Magistrate Judge, U.S. district court for the Northern District of Illinois, Eastern Division. (Dkt. 34).

5. At this initial appearance, Judge Valdez set the Preliminary Hearing for November 7, 2019 at 11:00 a.m. (Dkt. 34).

6. On November 7, 2019, the Preliminary Hearing was held as to Defendants Barton and Owen before Judge Valdez and continued to November 14, 2019. (Dkt. 42).

7. On November 14, 2019, the Preliminary Hearing as to Defendants Barton and Owen was completed. (Dkt. 45)

8. On November 27, 2019, the government was granted an extension of time to file an indictment in this case until February 6, 2020. (Dkt. 51)

9. On December 3, 2019, this Court granted Defendants Barton and Owen until December 20, 2019 to file a Brief as to the Preliminary Hearing. (Dkt. 52).

## II. APPLICABLE LEGAL PRINCIPLES

### A. Preliminary Hearing.

Rule 5.1(a) of the Federal Rules of Criminal Procedure guarantees a defendant a preliminary hearing before a federal magistrate and allows the judicial officer to determine whether probable cause exists to believe that the defendant committed the offense. Fed. R. Crim. P. 5.1 (e). Under Rule 5.1 (f) of the Rules "[i]f the magistrate judge finds no probable cause to believe an offense has been committed or the defendant committed it, the magistrate must dismiss the complaint and discharge the defendant." *See also* 18 U.S.C. § 3060 (a).

**B.     Concealment Money Laundering.**

Title 18 U.S.C. § 1956 (a) (1) defines domestic money laundering transactions. To be criminally culpable under this money laundering section, a defendant must conduct or attempt to conduct a financial transaction, ***knowing*** that the property involved in the financial transaction represents the proceeds of some unlawful activity, with the specific intent and knowledge that the transaction was designed to conceal or disguise the nature, location, source, ownership or control of proceeds of the specified unlawful activity (18 U.S.C. § 1956 (a) (1) (B) (i)).

**C.     Venue in Concealment Money Laundering.**

The Constitution requires that a person be tried for an offense where that offense is committed. *See* U.S. Constitution, Amendment VI; Fed. R. Crim. P. 18 ("Unless a statute provides otherwise, the government must prosecute an offense in a district where the offense was committed").

> . . .the site of a charged offense "must be determined from the nature of the crime alleged and the location of the act or acts constituting it."

*U.S. v. Cabrales,* 524 U.S. 1 (1998) (quoting *United States v. Anderson,* 328 U.S. 699, 703 (1946)). The government bears the burden of establishing by a preponderance of the evidence that the place it has selected to prosecute the crime is permissible. *See United States v. Lewis,* 797 F.2d 358, 366 (7th Cir. 1986), *cert. denied,* 479 U.S. 1093 (1987); *see also United States v. Taylor,* 896 F.3d 155, 171 (2nd Cir. 2018).

III.  ARGUMENT

A.  **The Government Lacks Probable Cause to Hold Barton to Defend in In the Northern District of Illinois, E.D.; Venue is Proper in Ohio.**

1.  **The Government's Evidence Establishes that Barton Has Ohio Contacts Only.**

At the preliminary hearing, the government called Agent Joseph Villa, a special agent with the IRS Criminal Investigations assigned to the investigation in this case. (11/7/19 Tr. 4:16-20; Tr. 5:12-14). The government introduced on exhibit at the hearing, the criminal complaint filed in this case. (Dkt. 1; Government Ex. (GX 1) (11/7/19 Tr. 6:13-25)). The complaint alleges the time period at issue is August 2017 through May 2019. (Dkt. 1; GX 1). During this period, Defendant Jery Barton lived in Ohio (11/7/19 Tr. 41:4-6) and worked as an attorney licensed to practice in the state of Ohio (11/7/19 Tr. 34:1-7; Tr. 40:25-41:3; Dkt. 1; GX 1 p. 59, FN 26) until he retired on April 4, 2019. (Dkt. 1; GX 1 p. 59 FN 26; 11/7/19 Tr. 41:2-24). Barton's law office, Barton Law Firm LPA was located at 7445 Airport Highway, Holland Ohio 43528. (Dkt. 1; GX 1 p. 59 FN 22). He was not licensed to practice in any other state. (Dkt. 1; GX 1 p. 29 FN 26; 11/7/19 Tr. 41:25-42:2). His cell phone that was the subject of the government's electronic surveillance in the case [Barton Phone I] was registered to his firm. (Dkt. 1; GX 1 p. 29 FN 22).

2.  **The Bank Accounts at Issue Were in Ohio.**

The complaint alleges that Barton was Ohio based. (Dkt. 1, GX 1 p. 4 ¶ 5 (c)). It alleges that his conduct at issue was acting as a "paymaster"[1] in which he acted a the direction of

---

[1] The term "paymaster" does not connote drug activity. Rather, "paymasters" and "paymaster accounts" such as Barton had been akin to IOLTA accounts used by lawyers and non lawyers where the account holder is acting as a neutral third party to receive funds from any transaction involving two separate individuals or entities. The paymaster holds the funds in escrow and then disburses those funds to the seller. *See e.g.* www.blicklawfirm.com.

4

Bustamante and others by (1) opening bank accounts at multiple financial institutions[2], (2) allowed members of Bustamante's organization to deposit proceeds into these accounts, which the government alleges Barton knew to be illicit proceeds, and then (3) transferred these proceeds from his bank accounts to other bank accounts designated by Bustamante and "drug money owners". (*Id.*).

The complaint identifies transactions in seven accounts.

1) One is **Chase IOLTA Account # 1 (6709)** (Dkt. 1, GX 1, pp. 36-37, 117 ¶¶ 39-41, 204 (b); 11/7/19 Tr. 41:15-20). It is undisputed that IOLTA accounts are bank accounts for an attorney to hold client funds. (Dkt. 1, GX 1, p. 31 FN 19). This bank account was registered to the Barton Law Firm, LPA at 7445 Airport Highway, Holland OH. (Dkt. 46, p. 3, Barton Ex. ("BX") 2; 11/14/19 Tr. 65:12-20; Tr. 67:11-68:20).

2) A second bank account was the **Chase IOLTA Account # 2 (8870).** (Dkt. 1, GX 1, pp. 38, 117 ¶¶ 42-44, 204 (c)). There is no dispute that this was an IOLTA account in the name of the Barton Law Firm, LPA and that it was opened after the 6709 IOLTA account was closed. (Dkt. 1, GX 1, p. 38 ¶ 42) and that the Barton Law Firm LPA was located at 7445 Airport Highway, Holland OH. (Dkt. 1, GX 1, p. 41 FN 22; Tr. 68:21-24; Tr. 69:4-9; Tr. 70:13-20).

3) A third bank account was the **Huntington IOLTA (8708).** (Dkt. 1, GX 1, pp. 31-32, 39-44, 46, 48, 49, 52, 54, 66, 117, ¶¶ 33, 34, 45-50, 52, 54 (b), 57, 58, 60, 61, 64, 65 (c), 87 (a), 204 (d); 11/14/19 Tr. 70:21-72:22). This account was also registered to the Barton Law Firm, LPA

---

[2] Although the complaint asserts that Barton's bank accounts were opened at the direction of Bustamante (GX ¶ 5 (c) but the complaint makes clear that this assertion is not correct. In paragraph 45, the government alleges that this account was opened in August 13, 2013, four years before the transactions at issue in this case began in August 2017. (*See also* 11/14/19 Tr. 72:23-Tr. 73:12). Further, Chase IOLTA account 2 (8870) was opened in May 2018, after the first Chase IOLTA account (6709) was closed (GX ¶ 42; 11/14/19 Tr. 69:4-9), and not at Bustamante's direction.

at 7445 Airport Highway, Holland OH. (Dkt. 46, p. 4, BX 3; 11/14/19 Tr. 72:3-22). Agent Villa conceded that the assertion in the complaint that this account was opened at Bustamante's direction was not correct. (11/14/19 Tr. 73:7-12).

    4) A fourth bank account identified is **Barton's Huntington Law Firm Account (8931).** (Dkt. 1, GX 1, pp. 52, 118, ¶¶ 64, 205; 11/14/19 Tr. 76:7-11) This account was also registered to the Barton Law Firm, LPA at 7445 Airport Highway, Holland OH. (Dkt. 46, p. 5, BX 4; 11/14/19 Tr. 76:18-24).

    5) A fifth bank account identified was the **Huntington Compliance Paymaster Account (9283).** (Dkt. 1, GX 1, pp. 44, 49, 55-57, ¶¶ 55 (a), 60, 67-73; 11/14/19 Tr. 76:25-77:8). This account was opened shortly before Barton's retirement as an attorney and also registered to the 7445 Airport Highway, Holland OH address where Barton's law firm had been located prior to his retirement. (Dkt. 46, p. 6, BX 5; 11/14/19 Tr. 77:9-78:8).

    6) A sixth bank account identified was the **Barton Personal Account at Huntington Bank (8322).** (Dkt. 1, GX 1, p. 56, ¶ 69). This account was also registered to Jery Barton at the 7445 Airport Highway, Holland OH address where Barton's law firm had been located prior to his retirement. (Dkt. 46, p. 7, BX 6; 11/14/19 Tr. 79:2-80:2).

    7) A seventh bank account, identified in ¶ 5 (c) of the complaint at p. 4 as a Bank of America account is alleged but no transaction in this account has been identified.

    **3.    The Government's Evidence Does Not Place Barton in Any Location Other Than Ohio.**

Besides having bank accounts registered to himself, his law firm or his office address and participating in telephone calls with Bustamante and Owen, Barton did not have any contact with the drug dealers identified in the complaint, had no contact with drug trafficking activities alleged

6

in the complaint, did not travel to collect or have contact with the individuals with narcotics proceeds collected by Bustamante or have contact with any of the locations outside of Ohio described in the complaint.

Barton is not alleged to be, nor is there evidence to show that he was a participant in the Mexican cartels or the money laundering and drug trafficking alleged in paragraph 7 (a) through 7 (h) on page 8 of the complaint. (11/14/19 Tr. 82:2-83:20).

Agent Villa confirmed that the he did not have any evidence that Barton was in Chicago on August 30, 3017 when Bustamante travelled to Chicago as alleged in paragraph 6 (b), p. 5 of the complaint. (11/14/19 Tr. 80:8-81:11). Barton was not at the meeting Bustamante had with undercover DEA agents on January 30, 3019 as alleged in paragraph 6(d) of the complaint (*Id.* Tr. 81:12-18) for the purpose of recruiting them to fly large quantities of narcotics and narcotics proceeds. (Tr. 83:21-84:7) Barton was not physically present in any location other than Ohio and did not travel to collect proceeds from money couriers or drug traffickers as Bustamante is alleged to have done in Kentucky, Ohio, Alabama, Tennessee, Detroit Michigan or Boston Massachusetts (*see* paragraph 6 (g), and 74-202 at pages 57-117 of the complaint), nor is he alleged to have arranged travel for these trips for Mr. Bustamante. (*Id.* Tr. 81:19-82:1; Tr. 84:13-87:24).

    **4.**    **Venue in Concealment Money Laundering Requires Is the Place Where The "After the Fact" Actor's Bank Transactions Occurred.**

As the *Cabrales* Court noted, where a Defendant acts "after the fact" to conceal a crime begun and completed by others, the first crime is an essential element of the second, but "the question here is the *place* appropriate to try the "after the fact" actor." 524 U.S. 1. In this case, Barton is charged with bank transactions he conducted that began, continued and were completed in Ohio. He is not charged with acquiring the funds in one district and transporting them to another,

7

nor with participation in the underlying collection and transportation of funds by Bustamante, nor participation in the narcotics trafficking. Rather, he is charged with activity he conducted while in Ohio in bank accounts located in Ohio and the complaint does not allege any act committed by Barton in Illinois.

Therefore, venue in Illinois is improper just as venue in Missouri was improper in *Cabrales*.

### B. There Is No Direct Evidence Supporting an Inference That Barton Had Knowledge That He Was Laundering the Proceeds of Unlawful Narcotics Activity.

As noted above, besides having bank accounts registered to himself, his law firm or his office address and participating in telephone calls with Bustamante and Owen, Barton did not have any contact with the drug dealers identified in the complaint, had no contact with drug trafficking activities alleged in the complaint, did not travel to collect or have contact with the individuals with narcotics proceeds collected by Bustamante or have contact with any of the locations outside of Ohio described in the complaint.

Barton is not alleged to be, nor is there evidence to show that he was, a participant in the Mexican cartels or the money laundering and drug trafficking alleged in paragraph 7 (a) through 7 (h) on page 8 of the complaint. (11/14/19 Tr. 82:2-83:20).

Agent Villa confirmed that the government did not have any evidence that Barton was in Chicago on August 30, 3017 when Bustamante travelled to Chicago as alleged in paragraph 6 (b), p. 5 of the complaint. (11/14/19 Tr. 80:8-81:11; Tr. 94:12-23). Barton was not at the meeting Bustamante had with undercover DEA agents on January 30, 3019 as alleged in paragraph 6(d) of the complaint (*Id.* Tr. 81:12-18) for the purpose of recruiting them to fly large quantities of

8

narcotics and narcotics proceeds. (Tr. 83:21-84:7). Barton was not physically present in any location other than Ohio and did not travel to collect proceeds from money couriers or drug traffickers as Bustamante is alleged to have done in Kentucky, Ohio, Alabama, Tennessee, Detroit Michigan or Boston Massachusetts (*see* paragraph 6 (g), and 74-202 at pages 57-117 of the complaint), nor is he alleged to have arranged travel for these trips for Mr. Bustamante. (*Id.* Tr. 81:19-82:1; Tr. 84:13-87:24).

Further, insofar as the money laundering was concerned, Barton was not involved with the initial deposits of the alleged narcotics proceeds into Wire Transfer Business A (e.g. ¶ 117 of complaint), or other wire transfer business accounts such as Wire Transfer Business B (e.g. ¶ 131), the UC 3 Bank Account (e.g. ¶ 5 (a)), or DEA Account (e.g. ¶ 30). (11/14/19 Tr. 90:11-91:18) from which deposits were transferred to other accounts and then made into Barton's accounts. (*Id.* 91:19-93:1). Barton was then instructed by others, including Bustamante, Owen, Individual A etc to transfer monies to other locations not clearly associated with drug activity, such as an Italian hair salon (Dkt. 1 GX 1, paragraph 33 pp. 31-32) (11/14/19 Tr. 66:9-67; Tr. 71:4-7; Tr. 74:3-7; Tr. 75:22-76:2; Tr. 93:2-14; Tr. 94:9-11).

   1. **The Government's Evidence Does Not Support an Inference That Barton Knew He Was Transferring Proceeds of Unlawful Narcotics Activity.**

Agent Villa conceded that the government did not have any direct evidence that Barton knew or was told that the money he was transferring were the proceeds of unlawful or laundered narcotics activity but, rather, the government's inclusion of Barton as a defendant was based on an inference. (11/14/19 Tr. 94:17-18). The government's inference is based on various "code words" and ignoring its evidence that supports the conclusion that Barton understood he was interacting

9

with Bustamante and Owen and others in his capacity as an attorney through his retirement in April 2019 and thereafter as a paymaster.

One of the words used during the investigation from which the government drew an inference that Barton knew he was involved with the proceeds of unlawful narcotics activity was the word "hemp". (11/14/19 Tr. 94:24-2; *see also* ¶¶ 33- 34; 11/7/19 Tr. 21:7-23). However, the use of the term "hemp" in a conversation on May 11, 2019 does not support an inference that it was a reference to illegal narcotics because Congress had legalized hemp effective December 20, 2018 in the 2018 farm bill or Agricultural Improvement Act of 2018, Public Law 115-334 (http://legislink.org/us/pl-115-334).

Another word the government inferred Barton knew he was involved in criminal activity was Bustamante's use of the term "textiles" in a conversation with Barton (complaint paragraph 34, p. 33; 11/7/19 Tr. 21:24-22:6). However, the foundation for the government's conclusion that the word "textiles" was code for narcotics was Bustamante's conversation with the undercover DEA agents he was recruiting to be pilots (11/7/19 Tr. 21:24-22:6), a conversation that Barton was not a part of (11/14/19 Tr. 96:18-97:19). The government conceded that "textiles" had an innocent construction. (11/14/19 Tr. 97:20-98:2). Similarly, the terms "equipment" and "construction equipment" are words with innocent constructions. (paragraph 33, p. 32 of complaint; 11/14/19 Tr. 98:3-8). The term "plastics", also referenced in paragraph 33, has an innocent construction and is not clearly associated with narcotics.

Further, a discussion involving "bitcoins, servers and all technology stuff" (11/7/19 Tr. 35:25-36:1) does not connote some illegal activity as bitcoin is a legal currency in the United States

in 2013 and was even mentioned in the U.S. Supreme Court case *Wisconsin Central Ltd. v. United States,* 138 S. Ct. 2067 (2018) regarding the changing definition of money.

Likewise, Barton's request that Bustamante provide a more formal business title for a person described as a "runner" (11/7/19 Tr. 36:21-37:5) is not evidence that Barton was aware that the "runner" was engaged in illegal narcotics activity of any sort and the government did not offer evidence of the narcotics activity of this "runner", or a basis for Barton to know of such activity. Further, the word "runner" can have an innocent construction in many contexts and without more does not connote illegal activity.

In *United States v. Garcia,* 919 F.3d 489, 503 (7th Cir. 2019), the Seventh Circuit reversed the conviction of Garcia where the government's case "consists entirely of inferences the government argues may be drawn". Although there the Court's standard was whether the evidence permitted an inference beyond a reasonable doubt, the links in the chain of inferences against Garcia and necessary to avoid speculation as to his guilt in distributing cocaine were substantially stronger than those against Barton. *Id.* The Seventh Circuit noted that "a judge must take special care to guard against the possibility that a defendant might be found guilty by either speculation or mere association." *Id.*

> Circumstantial evidence that leads only to a "strong suspicion that someone is involved in a criminal activity is no substitute for proof of guilt beyond a reasonable doubt." [*Piaskowski v. Bett,* 256 F.3d 687] at 692.
> And evidence that calls for inferences that are "motivated or made possible by speculation"-especially inferences "focused on a defendant's presence or association with criminals or their criminal activity"-will fail to carry the government's burden. [*United States v.] Jones,* 713 F.3d [336], 347 [(7th Cir. 2013)]. It is simply not enough to "fill the [evidentiary] gaps with inferences of guilt by association or evidence of an individual's mere presence somewhere criminal activity may have occurred."

11

*Id.* at 352.

*Garcia*, 919 F.3d at 503. Here, the government's proof at the preliminary hearing at best supports an inference that Barton was "merely present". In *Garcia,* the government not only relied on code words such as "girl" meant "cocaine" and the word "work" also meant either "cocaine" or "drug dealing". The Seventh Circuit however rejected these code words as links in the chain of inferences against Garcia because the government's investigation did not offer any corroboration that Cisneros who used these terms in order to reasonably infer that Garcia understood him to be speaking about cocaine. Here, the government's investigation has not corroborated that Barton would understand the use of the terms "hemp", "textiles", "equipment" or other words with innocent meanings to be references to narcotics.

Here, the government's investigation offers no corroboration for inferring that Bustamante's and/or Owen's use of "code words" for narcotics were understood by Barton to be references to narcotics, particularly where, as here, Barton had no physical presence or contact with the alleged drug dealers. In *Garcia,* where the Seventh Circuit found the evidence insufficient to support Garcia's criminal culpability, an individual matching Garcia's description was picked up in surveillance entering Cisneros' residence where drug activity occurred. Agent Villa conceded that none of the surveillance in the instant investigation captured Barton. (11/14/19 Tr. 84:25-85:7; Tr. 86:2-8, 19-23; 24-Tr. 87:6, 12-16).

**2.   The Government's Other Evidence Strongly Supports the Conclusion That Barton Did Not Know He Was Involved with Proceeds of Illegal Narcotic Activity.**

Indeed, perhaps most persuasive as to the government's evidence that Barton lacked knowledge that the monies he transferred at Bustamante's direction were proceeds of unlawful

12

narcotics activity is the April 3, 2019 tape recorded conversation between Owen and Bustamante in which the two state they cannot tell Barton that monies are from the sale of cannabis and they had to conceal from Barton that fact that money was from the sale of cannabis and had to make up a story for the source of the funds, such as "farm equipment". (Dkt. 1, GX 1, paragraph 48 (b), p. 40; 11/14/19 Tr. 98:14-99:18). And, when Bustamante asks Barton's advice in an August 9, 2019 conversation as to the compliance issues for depositing the proceeds from the lawful sale of cannabis (Dkt. 1; GX 1, paragraph 36 (a), p. 33-34), Barton does not offer his bank accounts for the deposit of those funds but, rather, states that he can "lay out the compliance issues for you, and we can see if here is a chance for success or not." (11/14/19 Tr. 99:19-102:7).

### 3. The Evidence Supports the Conclusion That Barton Understood He Was Serving as an Attorney/Advisor Not as a Knowing Participant in an Illegal Money Laundering Organization.

In several of the transactions identified in the complaint, Barton's contemporaneous actions indicate that he understood he was acting as an attorney, and after he retired, as a paymaster in advising and assisting Bustamante and others. (Dkt. 1; GX 1, paragraphs 40, 41 (e), and 43, pp. 36-38, in March 2018 Barton transfers $ 50 as a "legal fee" to his law firm account and in May 2018 he transfers $ 3000 for a "legal fee"; 11/14/19 Tr. 67:3-10).[3] In fact, agent Villa, confirms this when he reports his May 22, 2019 conversation with Barton about Individual F and Barton stated that Individual F was connected to a client and thus he could not discuss the matter any further. (11/7/19 Tr. 37:10-16). The fact that Barton advised his client, Bustamante, that an IRS agent had questioned about Individual F in no way alerts Barton that there is an issue of illegal

---

[3] The government's assertion that Barton falsely labelled this $ 50 payment he called a "legal fee" and transferred into his law firm account is not supported by any evidence. It appears the assertion that this was not a "legal fee" is premised on the government's drawing of an inference as is addressed in § III (B) (1). the record. In fact, the record supports that Barton was acting in his capacity as an attorney, including the use of IOLTA accounts.

13

narcotics activity, as opposed to a client having a tax related issue. Understandably, Barton would be concerned about an IRS agent asking him questions about individuals that he knew but this fact does not support an inference that Barton knew that Bustamante and Owen were engaged in illegal narcotics activity and that he, Barton, was receiving the proceeds of that unlawful activity. (paragraph 62 of complaint, 11/7/19 Tr. 37:23-15).

IV. CONCLUSION

WHEREFORE, for the forgoing reasons, Defendant Barton respectfully requests that this Court dismiss the complaint against him for lack of probable cause.

Dated: December 19, 2019          RESPECTFULLY SUBMITTED,

                                  DEFENDANT JERY BARTON,

                                  By: /s/ Susan Bogart
                                          His Attorney

Law Offices of Susan Bogart
111 West Jackson Blvd., Ste. 1700
Chicago, IL  60604
312-214-3271
Sbogart514@susanbogart.com
sbogart@susanbogart.com