IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 19 CR 733-2,3 |
| | ) | |
| RICK OWEN and JERY BARTON, | ) | Magistrate Judge |
| | ) | Maria Valdez |
| Defendants | ) | |
| | ) | |

## ORDER

The Court, having held a preliminary examination in this matter, finds that

probable cause exists to hold the defendants to answer in the district court for the

charge of the crime of money-laundering conspiracy, in violation of 18 U.S.C.

Section 1956(h). The Court allowed the defendants and the government to submit

closing argument briefs. By agreement of all parties, the briefs were due on

December 20.

Under Federal Rule of Criminal Procedure 5.1(a), the sole purpose of the

preliminary hearing is to determine whether there is "probable cause to believe that

an offense has been committed and that this defendant committed it." The rule

allows the Court to consider and rely on hearsay evidence. *United States v. Adeyeye*,

359 F.3d 457, 460-61 (7th Cir. 2004). It also allows a defendant to cross-examine

witnesses. Further, in making this probable cause determination, courts apply a

"totality of the circumstances analysis" and "make a practical, common sense

1

decision whether, given all the circumstances . . . , there is a fair probability that the defendant committed the crime. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Here, the defendants did exercise the right to cross-examine the agent but did not choose to call any witnesses on their own behalf. The Court finds the testimony of Special Agent Villa and the evidence to be sufficiently credible and reliable to establish each element of the crime charged. The defendants are charged under 18 U.S.C. § 1956(h) with conspiracy to launder money, which requires establishing that they were knowingly involved with two or more people for the purpose of money laundering, *United States v. Gracia*, 272 F.3d 866, 873 (7th Cir. 2001), and that they "1) conducted a financial transaction with the proceeds of an illegal activity; 2) knew that the property represented illegal proceeds; and 3) conducted the transaction with the intent to promote the carrying on of the unlawful activity." *United States v. Febus*, 218 F.3d 784, 789 (7th Cir. 2000). The agreement does not have to be explicit and may be proven by circumstantial evidence. *United States v. Turner*, 400 F.3d 491, 496 (7th Cir. 2005).

## A. Venue

Before addressing the specific factual determinations, the Court will address the legal argument raised by the defendant Barton concerning proper venue. Barton argues that the Northern District of Illinois is an improper venue for the charge. He claims that all of the essential acts specifically committed by Barton as relied upon by the government took place in Ohio, and thus venue is proper only in Ohio.

The proper place for a trial for the charge of money laundering conspiracy is "in the district where venue would lie for the completed offense under [Section 1956(i)(1)], or in any other district where an act in furtherance of the attempt or conspiracy took place." *See Whitfield v. United States*, 543 U.S. 209, 215-218 (2005) (noting that an overt act is not necessary for conviction under Section 1956(h), but that when an overt act has been committed, venue is proper in any district where the act took place). For crimes that occur in more than one state or district, venue is constitutionally and statutorily proper in any district in which part of the crime was committed. *See* 18 U.S.C. § 3237(a); *United States v. Tingle*, 183 F.3d 719, 726 (7th Cir. 1999). The traditional rule is that a conspiracy charge may be tried in any district in which an overt act of the conspiracy occurred. *See United States v. Rodriguez*, 67 F.3d 1312, 1318 (7th Cir. 1995); *United States v. Molt*, 772 F.2d 366, 369 (7th Cir. 1985) ("As long as one overt act in furtherance of the conspiracy is committed in a district, venue is proper there.").

As the government points out, a number of acts alleged were committed by co-defendant Bustamante in furtherance of the conspiracy in the Northern District of Illinois, some of which defendant Barton was specifically aware were being carried out in Illinois. The court adopts the government's statement of factual support found in the United States' Memorandum in Support of a Finding of Probable Cause [Doc. No. 55] at 12-13, and finds that the argument as to improper venue is not well taken.

B.    **Factual Findings in Support of Probable Cause**

  1.    *Defendant Owen*

Defendant Owen argues that probable cause is lacking due to no direct or indirect evidence that he was aware of illegal money laundering based on narcotics sales. The Court disagrees. There is sufficient circumstantial evidence to show that Owen helped Bustamante to locate bank account holders that would allow money to pass through their accounts. (*See* Compl., Ex. 1 ¶ 5(b).) CS2 was identified by Owen as one such account holder. Owen introduced CS2 to Bustamante and between August 2017 and February 2019, approximately $2,661,050 in cash was laundered that account, which CS2 described as illicit proceeds. (*Id.* ¶¶ 13(b), (d) and (h).) Owen argues that the Complaint alleges that Owen introduced Bustamante to CS2 in early 2016, and since no transactions are alleged until one and a half years later, that is evidence of a lack of knowledge. Overall, however, Owen still must contend with the CS2 stating that Owen instructed CS2 where to transfer the (according to CS2) illicit proceeds after they were deposited into the Company A Bank Account. (*Id.* ¶ 13(f).)

Owen's role also included helping Bustamante make travel plans for the purpose of collecting and depositing illicit narcotics proceeds. (*See id.* at ¶¶ 132, 135-36, 85-88, 113-15, and 189-90.) Owen's knowledge of the illicit activity can be found in conversations between Owen and Bustamante discussing "Lalo." (*Id.* at ¶¶ 115(a); 115(b), 132, and 136.) There are sufficient allegations in the Complaint to demonstrate that Owen knew, at least indirectly, about the illicit nature of the

4

transfers of money. (*Id.* at ¶¶ 48(b), 106(a).) Owen was also aware that searches had been conducted by law enforcement on wire transfer locations where Bustamante had dropped off proceeds of probable narcotics transactions. (*Id.* at ¶¶ 201 and 201(a).) Owen was also aware that Bustamante had been accused of being a DEA informant. (*Id.* at ¶ 106.)

Specifically, Owen and Bustamante had a conversation that indicates Owen's knowledge of the illicit activity. Bustamante said, "You have no idea the attention that you guys are under, because other guys have stolen half a million, 300 grand. It's a total of 2 million dollars that people have taken from Lalo's group. So, if he thinks he's gonna get away from not paying back the money, . . . he really doesn't understand who these people are, man." (*Id.* at ¶ 35.)

Further, Owen challenges the agent's interpretation of certain terms and phrases as based on speculation. The Court finds that under the totality of the circumstances, the interpretations are not based just on speculation. Overall, the evidence and testimony at the preliminary hearing showed probable cause that Owen participated in the charged conspiracy.

### 2. *Defendant Barton*

Barton, like Owen, challenges the government's proof of knowledge that Barton was aware of the laundering of illegal narcotic proceeds. The Court finds that there is sufficient indirect evidence to suggest that Barton was aware that he was engaging with Bustamante in the laundering of money that was derived from the sale of cannabis, a controlled substance under federal law.

In August 9, 2019, Bustamante asked Barton about setting up a new bank account through which they could "process cash" and "be able to exit [transfer out] the funds within 48 hours, 72 hours." (*Id.* at ¶¶ 36(a) and 36(b).) Barton responded with ". . . it's gotta be on a place where they have some experience with those kind of arrangements. Which would be in one of the states where [ ] Cannabis is legal." (*Id.* at ¶ 36(a).) Barton argues that he was referring to hemp, a non-controlled substance. In the absence of testimony that he meant hemp, the Court has the affidavit indicating he specifically referred to proceeds from the sale of cannabis, not hemp. Barton also was aware that Bustamante was dealing with the same issue as Lalo – they wanted to send the money from the U.S. to Mexico and were having trouble doing so using normal banking channels. (*Id.* at ¶ 36(c).)

There is also support in the Complaint for finding probable cause that Barton had knowledge of the illicit source of the funds. After Barton was interviewed by federal agents in May 2019, he called Bustamante right away to say that he "told [the federal agent] nothing" but that Barton was concerned about the visit. (*Id.* at ¶ 62(b).) Shortly after this, Barton became aware that another person from whom Barton had received cash and deposited into Barton's account was the subject of a federal seizure of his funds. (*Id.* at ¶ 65(a).) Barton had also been asked about certain high deposits into his Huntington Bank accounts by bank compliance personnel. (*Id.* at ¶¶ 57, 65(a).)

Barton's response was to distance himself from the individuals who gave him the money that caused the bank's inquiry and to ask Bustamante to provide

6

information on them to Barton. (*See id.* at ¶¶ 57(c), 59(a).) Bustamante referred to one individual as a "runner" for Lalo and Barton responded with that's "not what Huntington wants to hear." (*Id.* at ¶ 59(b).)

Taken as a whole, this is sufficient evidence to demonstrate probable cause on the knowledge aspect of the charge of conspiracy. Barton's conduct as detailed in the Complaint, his use of his IOLTA account, his awareness of Bustamante's knowledge and dealings with Lalo and others, his response to bank inquiries, and his other statements, show sufficient knowing participation in the conspiracy.

The issue for the Court to determine is whether there is sufficient evidence to hold the defendants to answer in the district court. Overall, the circumstantial evidence meets the "fair probability" standard of a preliminary hearing and leads this Court to the conclusion that there is probable cause to believe that the offense alleged in the complaint entitled *United States v. Owens and Barton,* 19 CR 733, has been committed and that the defendants have committed it. The defendants will be held to answer in the district court.


**SO ORDERED.**                              **ENTERED:**



**DATE:     January 8, 2020**          _____
                                       **HON. MARIA VALDEZ**
                                       **United States Magistrate Judge**